# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:22-cv-01762-SBP (Consol. Lead Case)

EAGLEBANK,

      Plaintiff/Counterclaim Defendant,

v.

YAJIA HU SCHWARTZ, individually and as trustee of the Yajia Hu Schwartz Revocable Trust and as co-trustee of the Axis Investment Holdings Trust, and
MARK ALAN SCHWARTZ, individually and as co-trustee of the Axis Investment Holdings Trust,

      Defendants/Counterclaimants, and

AXIS INVESTMENT HOLDINGS TRUST and
TAX LIEN LAW GROUP, LLC,

      Defendants/Counterclaim Plaintiffs.

---

## ORDER

---

**Susan Prose, United States Magistrate Judge**

    This matter comes before the court[1] on the Motion for Partial Judgment on the Pleadings

Under F.R.C.P. 12(c) (the "Motion" or "Rule 12(c) Motion") filed by Plaintiff and Counterclaim

Defendant EagleBank, ECF No. 52.[2] Having reviewed the Motion, the relevant pleadings, and

---

[1] The parties consented to have the undersigned Magistrate Judge preside over this matter for all purposes. *See* ECF No. 71; 28 U.S.C. § 636(c); Fed. R. Civ. P. 73; D.C.COLO.LCivR 72.2.
[2] References to "ECF No. ---" refer to docket entries in the instant case. References to "Adams ECF No. ---" refer to docket entries in *Schwartz v. James and Christina Adams Family Trust, et al.*, No. 22-cv-00930-RM-SBP (D. Colo.), which United States District Judge Raymond P. Moore consolidated with the instant case by order dated October 14, 2022. *See* Adams ECF No. 54.

the applicable law, the court concludes that oral argument will not materially assist in the resolution of the Motion. The court **GRANTS** the Motion for the reasons set forth below.

## BACKGROUND

### I.      Facts

For purposes of this court's evaluation of the Rule 12(c) Motion, the relevant pleadings are (1) the First Amended Complaint and attached exhibits, ECF Nos. 19 ("Amended Complaint" or "Am. Compl."), 19-1 through 19-7 (exhibits)), filed by EagleBank on August 30, 2022; (2) the September 15, 2022 amended answer to the Amended Complaint, ECF No. 24, which includes counterclaims against EagleBank ("Answer/Counterclaims"), filed by the litigant group this court will collectively refer to as the "Schwartz Parties"[3]; and (3) the answer to the Schwartz Parties' counterclaims filed by EagleBank on September 26, 2022 (ECF No. 27). The court therefore emphasizes the well-pleaded facts drawn from these pleadings, as well as matters properly subject to judicial notice—including the entire docket here and records from related state court proceedings.[4]

---

[3] The "Schwartz Parties" are defendants and counterclaimants Yajia Hu Schwartz, individually and as trustee of the Yajia Hu Schwartz Revocable Trust and as co-trustee of Axis Investments Holdings Trust ("Axis"); Mark Alan Schwartz ("Schwartz"), individually and as co-trustee of Axis; and the Tax Lien Law Group, LLC ("Tax Lien Law"), which is Schwartz's law firm. Yajia Schwartz is married to Schwartz. Answer/Counterclaims ¶ 16 & n.4. In an effort to simplify the court's discussion of the tangle of legal entities Schwartz has created, the terms "Schwartz" and "Yajia Schwartz" should be understood to include, as relevant, their respective trusts and Schwartz's law firm.

[4] The court takes notice of facts "not subject to reasonable dispute" because they are "generally known within the trial court's territorial jurisdiction" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Notice may be taken sua sponte or "if a party requests it and the court is supplied with the necessary information," and at any stage of the proceedings. Fed. R. Evid. 201(c), (d). As

A.        **Schwartz, Axis, and Tax Lien Law default on a guaranty to EagleBank**

The procedurally tortuous history of this action began over a decade ago in the state of

Maryland, where EagleBank is incorporated and has its principal place of business. Am. Compl.

¶ 1. In August 2013, an entity called Sulion, LLC, entered into a loan agreement with

EagleBank, which the Maryland court referred to as the "REO Loan." *Tax Lien Law Group, LLC*

*v. EagleBank, et al.*, Nos. 1129, 1130, 2021 WL 3360972, at *1 (Md. Ct. Spec. App. Aug. 3,

2021) (observing that the purpose of the REO Loan was to allow Sulion to "borrow up to two

million dollars for the acquisition of distressed real estate"), *cert. denied*, 263 A.3d 518 (Md.

2021).[5] Schwartz controlled Sulion. *See Wells Fargo Bank, N.A. v. Mesh Suture, Inc.*, 31 F.4th

1300, 1303 (10th Cir. 2022) (noting, in affirming summary judgment awarding control of a bank

account to Schwartz's former business partner, that Schwartz, "allegedly to extract a concession

from Dr. Dumanian, transferred the entire balance of Mesh Suture's Wells Fargo account

($3,929,135.89) into a non-Wells Fargo account held by Sulion LLC, which he controlled").

---

particularly pertinent here, the court may take judicial notice of proceedings in other courts,
"both within and without the federal judicial system, if those proceedings have a direct relation
to matters at issue." *St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169,
1172 (10th Cir. 1979); *see also Peoples v. Long*, No. 20-cv-02116-RBJ-NYW, 2021 WL
7159900, at *12 (D. Colo. Dec. 13, 2021), *report and recommendation adopted*, 2022 WL 92983
(D. Colo. Jan. 10, 2022) (stating that, in the context of a evaluating a motion for judgment on the
pleadings, the court may take judicial notice of the existence of state court opinions and records,
which are "not subject to reasonable dispute over [their] authenticity") (quotation omitted). And
the court also may take judicial notice of and consider documents on its own docket without
converting a motion to dismiss into a motion for summary judgment. *Tal v. Hogan*, 453 F.3d
1244, 1264 n.24 (10th Cir. 2006).

[5] For ease of reading, the court omits some quotation marks and pages citations for each
reference to the *Tax Lien Law Group* opinion. Unless otherwise noted, the facts here are taken
from pages one through three of the opinion.

As relevant to the instant dispute, Schwartz, Axis, and Tax Lien Law became the guarantors of the REO Loan. The agreement reflecting that guaranty included a "confessed-judgment" provision:

> Upon the occurrence of an event of default, and if such event of default shall continue beyond any applicable notice and cure period, the guarantor hereby authorizes any attorney designated by the lender or any clerk of any court of record to appear for the guarantor in any court of record *and confess judgment against the guarantor without prior hearing, in favor of the lender* for, and in the amounts of, the balance then due under any one or more of the promissory notes evidencing all or any part of obligations, all accrued and unpaid interest thereon, all other amounts payable by the guarantor to the lender under the terms of this agreement, costs of suit, and attorneys' fees of five percent (5%) of the unpaid principal sum.

*Tax Lien Law Group*, 2021 WL 3360972, at *1 (emphasis added). Separately, in May 2015, Sulion obtained another loan from EagleBank, which the Maryland court referred to as the "Tax Lien Loan." *Id.* Schwartz, Axis, and Tax Lien Law were the guarantors of the Tax Lien Loan.

By the time the two loans to Sulion came up for renewal in 2018, the principal balance on the REO Loan was zero, and the balance on the Tax Lien Loan was $3,847,793.50. *Id.* Schwartz and EagleBank agreed to renew the REO Loan under a "2018 Loan Agreement," which increased the credit limit to six million dollars. Schwartz, Axis, and Tax Lien Law were the guarantors on the 2018 Loan Agreement, which again was subject to a guaranty agreement that included a confessed-judgment provision. Of the six-million-dollar credit limit, $3,847,793.50 was immediately used to pay the balance of the Tax Lien Loan and closing costs, leaving $2,099,546.50 of available credit.

### B.    EagleBank obtains a $3.5 million Judgment by Confession against Schwartz, Axis, and Tax Lien Law

On January 22, 2020, EagleBank filed complaints against the borrowers (Sulion and two

other entities) and the guarantors: Schwartz, Axis, and Tax Lien Law. *Tax Lien Law Group*, 2021 WL 3360972, at *3. EagleBank alleged that the borrowers had defaulted and that Schwartz, Axis, and Tax Lien Law had failed to honor their obligations as guarantors. EagleBank supported its complaints with documentation, including copies of the note and guaranty agreement underlying the 2018 Loan Agreement and an affidavit by an EagleBank representative testifying to the default.

On January 30, 2020, a Judgment by Confession was entered against Schwartz, Axis, and Tax Lien Law in the amount of $3,534,029.08, plus pre-judgment interest at the rate of 6.625% from January 9, 2020, attorney's fees in the amount of $4,500, and post-judgment interest. *Id.* at *4; *see also* 1/30/2020 Certified Judgment by Confession, *EagleBank v. Tax Lien Law Group, LLC, et al.*, case number V478002 (Montgomery Cnty., Md., Circuit Ct.), ECF No. 19-3 at 2-4 (the "Judgment by Confession"). The court simultaneously issued notice of the Judgment by Confession to the borrowers and guarantors—i.e., Schwartz and entities under his control.

Schwartz tried, but failed, to vacate the Judgment by Confession. On appeal to the Court of Special Appeals of Maryland, Schwartz argued that the guarantors (and borrowers) "were not provided with adequate notice or service of the judgments, that the 2018 Note and 2018 Guaranty were unenforceable and void *ab initio* due to lack of consideration, that there was no event of default other than the one manufactured by EagleBank, and that EagleBank breached its contract with Borrowers and committed fraud by charging $52,000 for the loan renewal and credit increase when it 'had no intention of lending anything to Borrowers.'" *Tax Lien Law Group*, 2021 WL 3360972, at *4. The Maryland appellate court rejected each of these arguments, *id.* at *5-9, and specifically confirmed that Schwartz—along with the other

guarantors, who are controlled by Schwartz—never repaid the millions of dollars they owed to

EagleBank:

> Notably, as for the existence of an event of default, *Appellants do not contend that*
> *they paid the entire principal amount of $3,900,453.50 or any of the late charges,*
> *fees, and interest that were included in the judgment amount of $3,534.029.08.* Dr.
> Schwartz's[6] conclusory and unsupported assertions do not identify any facts to
> support the notion that there was no event of default. The record clearly reflects
> that the funds borrowed under the 2018 Loan Documents were not fully repaid—
> thus there is no basis for the Appellants' contention that there had been no event of
> default.

*Id.* at *7 (emphasis added). There is nothing in the record before this court indicating that

Schwartz (or any of the entities he controls) has since repaid this nearly four-million-dollar debt.

Schwartz and his co-guarantors mounted a collateral attack on the Judgment by

Confession by filing a complaint in a different jurisdiction (Anne Arundel County, Maryland),

which that court rejected on res judicata grounds. *See Tax Lien Law Group, LLC, et al. v.*

*EagleBank*, No. 80, 2024 WL 3548447, at *1 (Md. Ct. Spec. App. July 26, 2024) ("*Tax Lien Law*

*Group II*") (affirming dismissal of Schwartz's second case). Thus, the Judgment by Confession

remains in place.

### C.    Schwartz quitclaims a Vail Valley residential property to Yajia Schwartz after entry of the Judgment by Confession

Also relevant to the court's assessment of the Rule 12(c) Motion is a parallel timeline

involving the ownership status of property located in the Vail Valley in Eagle County, Colorado.

In June 2016, Schwartz, as trustee of the "Mark Alan Schwartz Revocable Living Trust

---

[6] It is unclear why the Maryland court used the appellation "Dr." in referring to Schwartz, other
than in reference to his being a lawyer with a juris doctor degree.

Number One Dated 12/14/1999," quitclaimed the property, located at 460 El Mirador in Edwards, Colorado (the "Property"), to Axis—an entity, as noted above, controlled by Schwartz. *See* Quitclaim Deed, ECF No. 19-2 (recorded on 6/28/2016 at reception number 201609829). The amount of "valuable consideration" for the transfer of the Property—described by the Schwartz Parties as a "7,800 sq. ft estate home [that] spans two acres and has panoramic mountain views," Answer/Counterclaims ¶ 9—was ten dollars. ECF No. 19-2.

On May 21, 2021, while the Judgment by Confession against Schwartz, Axis, and Tax Lien Law was on appeal, Axis recorded a quitclaim deed purporting to transfer the Property for ten dollars to the Yajia Hu Schwartz Revocable Trust, a trust controlled by Schwartz's wife.[7] *See* Quitclaim Deed, ECF No. 19-4 (recorded on 5/21/2021 at reception number 202112157) (the "May 2021 Transfer"). The Property generates $250,000 in annual income for Yajia Schwartz. Answer/Counterclaims ¶ 11.[8]

## II.    Procedural History

The case before this court originated in an action brought by EagleBank in the District

---

[7] Yajia Schwartz is also a co-trustee of Axis. *See* ECF Nos. 19-2, 19-4.

[8] The court further takes judicial notice of the public records of Eagle County, Colorado, which show that a "Public Trustee Deed" concerning the Property was recorded at reception number 20247836. The record of the deed indicates a "sale date" of February 13, 2024, with the Yajia Hu Schwartz Revocable Trust Being the grantor and H2 Properties Inc. being the grantee. Subsequently, on February 20, 2024, the Property was quit claimed again, this time from H2 Properties Inc. to "H2 Rentals LLC – Welcome to Realty LLC 401K PSP," also recorded at reception number 20247836. H2 Rentals LLC – Welcome to Realty LLC 401K PSP is listed as the current owner of the Property.  This information is not referenced in the pleadings or the arguments in connection with the Motion, and the court finds that it does not impact its assessment of the tortious interference and slander of title counterclaims against EagleBank. However, the parties are on notice that the court likely will need to understand the specifics surrounding these events for purposes of evaluating future dispositive motions.

Court for Eagle County, Colorado, and so the court begins with a discussion of that state

proceeding, followed by the procedural history of the case subsequent to its removal to this

court.

**A.      Eagle County, Colorado District Court case**

Colorado has adopted the Uniform Enforcement of Foreign Judgments Act. Colo. Rev.

Stat. §§ 13-53-101 *et seq.* "Under the Uniform Enforcement of Foreign Judgments Act (UEFJA),

section 13-53-103, C.R.S. 2023,[9] a foreign judgment properly authenticated and filed in a

Colorado court renders that judgment enforceable in the same manner as a Colorado judgment."

*Bert v. Evans*, No. 23CA1629, 2024 WL 3909074, at *1 (Colo. App. July 3, 2024) (footnote

added) (citing *Hunter Tech., Inc. v. Scott*, 701 P.2d 645, 646 (Colo. App. 1985)).

Here, on February 3, 2022, EagleBank filed with the Eagle County District Court a

Judgment Creditor Affidavit in Support of Foreign Judgment in case number V478002. ECF

No. 19-3 at 3-5. A Notice of Filing of Foreign Judgment was filed in the same case on February

24, 2022. *Id.* at 1-2. On March 7, 2022, EagleBank recorded with the Eagle County Clerk and

Recorder the Judgment by Confession and the Affidavit in Support of Foreign Judgment. ECF

No. 19-3 (recorded at reception number 202203811).

On April 5, 2022, EagleBank filed a complaint in the Eagle County District Court against

the Yajia Hu Schwartz Revocable Trust and Axis, alleging that the 2021 Transfer "was made

with actual intent . . . to hinder, delay or defraud EagleBank," in violation of the Colorado

Uniform Fraudulent Transfer Act, Colo. Rev. Stat. §§ 38-8-101 *et seq.* ("CUFTA"). ECF No. 19-

1 ¶¶ 7, 10-11 (Complaint, Case No. 2022CV30073). On April 6, 2022, EagleBank recorded with

---

[9] The UEFJA has not been amended since EagleBank initiated this action in Eagle County.

the Eagle County Clerk and Recorder a Notice of Commencement of Action and Lis Pendens, in which notice was given that, in case number 2022CV30073, EagleBank "is seeking to avoid and set aside a transfer of title which may affect" the Property. ECF No. 19-6 (recorded at reception number 202205957) (the "Lis Pendens"). On April 18, 2022, EagleBank recorded with the Eagle County Clerk and Recorder a Transcript of Judgment, reflecting a judgment of $3,538,529.08, plus interest in the amount of 6.625% per annum, against Tax Lien Law. ECF No. 19-7 (recorded at reception number 202207187).

### B.      Proceedings in this court

On July 15, 2022, the Schwartz Parties removed the Eagle County District Court case to this court, invoking diversity jurisdiction pursuant to 28 U.S.C. § 1332. ECF No. 1. EagleBank's First Amended Complaint, the operative complaint in this matter, was filed on August 30, 2022. Am. Compl. In the Amended Complaint, EagleBank set forth the timeline preceding the entry of the Judgment by Confession and the chronology of the proceedings in Eagle County District Court, *id.* ¶¶ 7-16, and brings a single claim for relief under the CUFTA. *Id.* ¶¶ 21-26.

The Schwartz Parties answered the Amended Complaint and brought five counterclaims against EagleBank for: declaratory judgment (Counterclaims 1-3); tortious interference with contract (Counterclaim 4); and slander of title (Counterclaim 5). *See generally* Answer/Counterclaims at 14-19.[10]

EagleBank seeks judgment in its favor on the tortious interference and slander of title counterclaims, Motion at 6-11, both of which hinge on the termination of contracts to sell, and to

---

[10] The Schwartz Parties label the counterclaims as "Counts," followed by a Roman numeral, but the court will refer to the relevant counterclaims as Counterclaims 4 and 5 for ease of reference.

provide a title commitment for, the Property following EagleBank's filing the Lis Pendens and this lawsuit. *See id.* ¶¶ 61-66.[11] According to the Schwartz Parties, EagleBank acted with the intention of "cloud[ing] and slander[ing] Yajia's title to the Property" and interfering with its sale "by creating an incurable record title exception[.]" *Id.* ¶¶ 61-62. The Schwartz Parties oppose the Rule 12(c) Motion. ECF No. 55 ("Response"). EagleBank did not file a reply.

For the reasons that follow, the court respectfully finds that EagleBank is entitled to judgment on the pleadings in its favor on both the tortious interference and slander of title counterclaims (Counterclaims 4 and 5, respectively), and that both claims should be dismissed with prejudice.

---

[11] As will be discussed in more detail below, the anticipated buyers—James and Christina Adams (the "Adamses"), along with their legal counsel, Michael K. Hagemann, and his law firm, M.K. Hagemann, P.C.—were formerly parties to this action (the "Adams Defendants"). On August 18, 2023, this court recommended that the Schwartz Parties' claims against the Adams Defendants be dismissed with prejudice, ECF No. 44, a recommendation adopted on September 18, 2023, by the Honorable Raymond P. Moore, the United States District Judge who was then presiding over the matter. ECF No. 47 (order accepting and adopting recommendation). On November 3, 2023, Judge Moore granted the Adams Defendants' motion to dismiss with prejudice their counterclaims against all other parties, including those against EagleBank, and entered final judgment in favor of the Adams Defendants. ECF No. 53 (order granting Adams Defendants' motion to dismiss counterclaims with prejudice, ECF No. 50, and motion for entry of final judgment, ECF No. 49). However, the Adams Defendants continue to be listed—erroneously—as parties to this matter in the court's docket. That error also has prompted EagleBank to request, in its Rule 12(c) Motion, that the counterclaims brought by the Adams Defendants against EagleBank be dismissed with prejudice. Motion at 6 ("the Adams Family requests that the Court dismiss with prejudice its Counterclaims against EagleBank").

Therefore, by separate order, the court will correct the errors in the docket and clarify (1) that all counterclaims brought by the Adams Defendants against all other parties have been dismissed with prejudice; (2) that final judgment has been entered in favor of the Adams Defendants; and (3) that the Adams Defendants are terminated from the case. The case caption here conforms with that correction.

## LEGAL STANDARD

A party may file a motion for judgment on the pleadings "after the pleadings are closed."

Fed. R. Civ. P. 12(c). A Rule 12(c) motion is evaluated under the same standard applicable to a

Rule 12(b)(6) motion to dismiss. *See Corder v. Lewis Palmer Sch. Dist. No. 38*, 566 F.3d 1219,

1223-24 (10th Cir. 2009). "But the court considers a broader factual record when evaluating a

Rule 12(c) motion; the court is not limited to the well-pled allegations contained in the

Complaint but instead considers 'the complaint, the answer, any written documents attached to

them, and any matter of which the court can take judicial notice for the factual background of the

case.'" *Tuttle v. Nationwide Affinity Ins. Co. of Am.*, No. 19-cv-00526-NYW, 2019 WL 2208513,

at *2 (D. Colo. May 22, 2019) (quoting *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422

(2d Cir. 2011); citing *Hall v. District of Columbia*, 867 F.3d 138, 152 (D.C. Cir. 2017) ("A Rule

12(c) motion considers the defendants' answers together with the complaint[.]"); *Hous. Auth.*

*Risk Retention Grp., Inc. v. Chicago Hous. Auth.*, 378 F.3d 596, 600 (7th Cir. 2004) ("In a

motion for judgment on the pleadings, the court considers the pleadings alone, which consist of

the complaint, the answer, and any written instruments attached as exhibits.")).

"To survive a motion for judgment on the pleadings, 'a complaint must contain sufficient

factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Crane v.*

*Utah Dep't of Corr.*, 15 F.4th 1296, 1302-03 (10th Cir. 2021) (quoting *Ashcroft v. Iqbal*,

556 U.S. 662, 678 (2009), quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A

claim has facial plausibility when the plaintiff pleads factual content that allows the court to

draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing

*Iqbal*, 556 U.S. at 678). However, "[c]ourts do not assume as true allegations that are legal

conclusions, formulaic recitations of elements, or naked assertions devoid of further factual enhancement." *Id.* (citing *Iqbal*, 556 U.S. at 678). And "factual allegations that contradict . . . a properly considered document are not well-pleaded facts that the court must accept as true." *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1385 (10th Cir. 1997).

In the end, "[t]o prevail on a motion for judgment on the pleadings, 'the moving party [must] clearly establish[ ] that no material issue of fact remains to be resolved and the party is entitled to judgment as a matter of law.'" *Denver Health & Hosp. Auth. v. Beverage Distribs. Co., LLC*, 546 F. App'x 742, 745 (10th Cir. 2013) (quoting *Park Univ. Enters., Inc. v. Am. Cas. Co. of Reading, PA*, 442 F.3d 1239, 1244 (10th Cir. 2006), *abrogated on other grounds by Magnus, Inc. v. Diamond State Ins. Co.*, 545 F. App'x 750, 753 (10th Cir. 2013)).

## ANALYSIS

## I.     Counterclaim 4: Tortious Interference with Contract

Under Colorado law,[12] a claim for intentional interference with contract, also called tortious interference with contract, has five elements: "(1) existence of a contract between the plaintiff and a third party; (2) knowledge of that contract by the defendant; (3) the defendant's intentional, improper interference with that contract; (4) breach of that contract by the third party; and (5) resulting damages to the plaintiff." *Arapahoe Surgery Ctr., LLC v. Cigna Healthcare, Inc.*, 171 F. Supp. 3d 1092, 1120 (D. Colo. 2016) (citing, inter alia, *Colo. Nat'l Bank of Denver v. Friedman*, 846 P.2d 159, 170 (Colo. 1993)). The Schwartz Parties assert that, in

---

[12] Long-established precedent directs that a federal court sitting in diversity applies the substantive law of the state where it is located. *Elm Ridge Exploration Co., LLC v. Engle*, 721 F.3d 1199, 1210 (10th Cir. 2013). Accordingly, the court analyzes the Schwartz Parties' counterclaims at issue here under Colorado law.

filing this lawsuit and the Lis Pendens in Eagle County District Court in April 2022, EagleBank tortiously interfered with two contracts: (1) a purchase contract for the Property between Yajia Schwartz and the Adamses, and (2) a contract between Yajia Schwartz and Title Company of the Rockies ("TCR"), as agent for Chicago Title Company, to furnish a title insurance commitment for the Property. Answer/Counterclaims ¶¶ 76-77.

EagleBank argues that judgment should enter in its favor on the tortious interference with contract counterclaim for reasons that include the Schwartz Parties' inability to prove a breach of any contract. Motion at 6-10. The court agrees with EagleBank.

### A.      Contract for the purchase of the Property

The court finds that the Schwartz Parties have failed to allege sufficient facts plausibly establishing multiple elements of a tortious interference claim.

As an initial matter, the court incorporates here, and assumes the reader's familiarity with, the detailed discussion in this court's previous recommendation to dismiss the claims against the Adams Defendants related to the Contract to Buy and Sell Real Estate (the "Contract") executed by Yajia Schwartz and the Adamses on January 30, 2022. *See generally* ECF No. 44 at 6-12; *see also id.* at 6-9 (discussing Adams ECF No. 7-1 (Contract) and Adams ECF No. 7-2 ("Contract Counterproposal")); *Tal*, 453 F.3d at 1264 n.24 (court may consider documents on its own docket). To reiterate the points most pertinent here, the Contract gave the Adamses "a right to object or terminate, *in Buyer's sole subjective discretion*, based on *any title matters* including those matters set forth in" Sections 8.2, 8.3, 8.5, and 13 of the Contract. Contract § 8.7 (emphasis added).

On February 2, 2022, Land Title Guarantee Company issued a Title Commitment for the

Property. ECF No. 44 at 9 (discussing Adams ECF No. 7-4). On March 30, 2022, Land Title revised its title commitment to take into account the Judgment by Confession, then totaling approximately $3,534,029.08. *Id.* at 10-11. This revelation of the Judgment by Confession— previously known, of course, to Schwartz—forced Yajia Schwartz to secure a new title commitment, which she sought from TCR, as an agent for Chicago Title. *Id.* at 11. An amendment to the Contract followed on April 4, 2022, extending the original closing date of April 4 to April 8, 2022. *Id.* (discussing Adams ECF No. 7-19 (the "Contract Amendment"). Like the Contract itself, the Contract Amendment gave the Adamses ultimate discretion to terminate the Contract: "The parties further specifically agree that if any Title Objection is not resolved in *Buyers' sole subjective discretion* by the Title Resolution Deadline included herein, the Contract shall terminate and the Buyers shall be entitled to the return of their Earnest Money within three business days." Contract Amendment at 2 (emphasis added).

With knowledge of the Judgment by Confession in hand, the Adamses did just that. On April 5, 2022, after counsel for the Adamses asked TCR for revisions to the title commitment— which TCR refused—the Adamses tendered to Yajia Schwartz a Notice to Terminate. ECF No. 44 at 12; *see also* Adams ECF No. 7-20 (5/5/2022 email from the President of TCR to a realtor for Yajia Schwartz, stating that the Adamses' "counsel submitted a request today to revise the standard language of the Owner's Policy Jacket," which Chicago Title denied, and that "Chicago Title has now declined to commit to insure the pending transaction"). As this court found (and Judge Moore agreed), the Adamses' response upon learning of a nearly four million dollar encumbrance on the Property did not constitute a breach of a contract as they had an unequivocal right to "terminate, in [their] sole subjective discretion, based on *any* title matters

14

. . . ." ECF No. 44 at 15-16 (explaining grounds for dismissing with prejudice the breach of contract claim) (emphasis added).

Turning then to the elements of an intentional interference claim, there undoubtedly was a contract between Yajia Schwartz and the Adamses. Whether the well-pleaded facts plausibly indicate that EagleBank "reasonably should have known of the existence of a contract" so as to satisfy the second element, *see Mueller v. Swift*, No. 15-cv-01974-WJM-KLM, 2017 WL 2362137, at *7 (D. Colo. May 31, 2017), is less clear. The Schwartz Parties assert that "EagleBank was informed of and knew of Yajia's contractual relationships with both the Adamses and Chicago Title Company, the issuer of her TCR-Chicago Title Insurance Commitments," Answer/Counterclaims ¶ 78, but EagleBank denied that allegation on grounds that it "lacks knowledge or information sufficient to form a belief about the truth of these allegations[.]" ECF No. 27 ¶ 78.

Regardless, the Schwartz Parties cannot prevail on the aspect of their tortious interference claim premised on the Contract to purchase the Property because there was no breach of that agreement by the Adamses, who properly invoked their unambiguous contractual right to decline to proceed with the purchase. As this court has previously ruled, and which bears reemphasizing here,

> No matter how Ms. Schwartz labels them, any claim she raises against the [Adams Defendants] will always rest on the flawed premise that she has a legal right to extricate herself from the clear and unambiguous term of the Contract—a standard term in a standard form explicitly directed for use by the Colorado Division of Real Estate—that allowed the Adamses to terminate the Contract at any time, in their "*sole subjective discretion*." The Contract terms can never be altered, nor can the Contract be revised to insert a term that would have prohibited the Adamses or their counsel from discussing the title-clouded Property with anyone of their choosing— including to evaluate the risks associated with its purchase. Moreover, the facts

> subject to judicial notice will always include a public record showing that Mark Schwartz and his "Tax Lien Law Group," not the [Adams Defendants], caused the "stain" on the Property in the form of a $3.5 million judgment lien.

ECF No. 44 at 35 (emphasis in original). No breach thus equates to no tortious interference claim.

Additionally, the pleadings here permit no inference of any "intentional, improper inference" on the part of EagleBank. *Arapahoe Surgery Ctr.*, 171 F. Supp. 3d at 1120. In initiating this lawsuit in a Colorado state court and providing written notice that it was "seeking to avoid and set aside" the May 2021 Transfer, *see* ECF No. 19-6, EagleBank merely exercised its legal right to attempt to enforce and collect on a Judgment for Confession now approaching four million dollars—a judgment which, notably, a Maryland appellate court declined to vacate. *Tax Lien Law Group*, 2021 WL 3360972, at *1 (finding against Schwartz on alleged grounds of error, including that "the Guaranty upon which [EagleBank] took judgment was unenforceable as a matter of law for lack of consideration"). The Supreme Court of Maryland denied certiorari in that matter, *see* 263 A.3d 518 (Md. 2021), and a second Maryland appellate court rejected Schwartz's collateral attack on the Judgment by Confession in a case Schwartz filed in another Maryland trial court. *See Tax Lien Law Group II*.

Nor may any inference of intentional or improper interference be drawn from EagleBank's docketing of the Lis Pendens. ECF No. 19-6. By Colorado statute, the recording of a lis pendens is authorized "[a]fter filing any pleading" when the relief sought "affect[s] the title to real property." Colo. Rev. Stat. § 38-35-110(1). The recording is proper if the claimant shows that the claim "relates to a right of possession, use, or enjoyment of real property." *Hewitt v. Rice*, 154 P.3d 408, 412 (Colo. 2007); *see also Better Baked, LLC v. GJG Prop., LLC*, 465 P.3d

84, 88 (Colo. App. 2020) (observing that "[o]ur supreme court broadly interprets the phrase 'affecting the title to real property'" in § 38-35-110(1)) (citing *Kerns v. Kerns*, 53 P.3d 1157, 1165 (Colo. 2002)). Here, the well-pleaded facts give the court no reason to doubt that the Lis Pendens "affect[s] the title to real property."

Nothing in the facts the court may consider here—including the judicially-affirmed Judgment by Confession and the documents irrefutably establishing the May 2021 Transfer from Axis to a trust in Yajia Schwartz's name—plausibly indicate that the Lis Pendens recorded by EagleBank "is forged or groundless, contains a material misstatement or false claim, or is otherwise patently invalid." *See* Colo. Rev. Stat. § 38-35-201(3); *see also Better Baked*, 465 P.3d at 89 (observing that a lis pendens may be a "spurious" document under Colorado's "spurious liens and documents" statute, Colo. Rev. Stat. § 38-35-201(2)). But even if EagleBank's underlying claim in this matter were to fail—a question on which this court expresses no opinion at this time—that would not render the Lis Pendens groundless. *Better Baked*, 465 P.3d at 89. Neither does the filing of the Lis Pendens plausibly evince any intentional or improper interference with the Contract on the part of EagleBank. Rather, an equally plausible inference to draw from the Rule 12(c) record is that EagleBank has lost an enormous sum in its loan to Schwartz and his entity cohorts, and it is acting in good faith here to attempt to recoup nearly four million dollars.

The Schwartz Parties point to no law that would undermine these conclusions. Instead, they assert that "EagleBank's Motion is wildly premature" and "conflates the facts, issues, and resolution of the Adams's case with the facts and issues in this case[.]" Response at 2. With respect, that is not accurate. The question of the plausibility of the Schwartz Parties'

counterclaims against EagleBank is a matter is ripe for resolution on a motion pursuant to Federal Rule of Civil Procedure 12(c), and the termination of the Contract between Yajia Schwartz and the Adamses is directly pertinent to the tortious interference counterclaim here. This court, having carefully considered the well-pleaded facts derived from the pleadings and materials properly subject to judicial notice in light of the applicable law, finds that the Schwartz Parties have failed to adequately plead that EagleBank intentionally interfered with the Contract between Yajia Schwartz and the Adamses.

### B.    Title commitment issued by Chicago Title/TCR

For similar reasons, the Schwartz Parties also have not pleaded that EagleBank tortiously interfered with any contract between Yajia Schwartz and Chicago Title or its agent, TCR.

As an initial matter, while the record contains a title insurance commitment for the Property issued by TCR, as an agent for Chicago Title, dated April 1, 2022 (with an effective date of March 21, 2022), *see* Adams ECF No. 7-16, it is unclear whether that document created any contractual obligations between Yajia Schwartz and Chicago Title/TCR. Rather, the document states that Chicago Title, "for a valuable consideration, commits to issue its policy or policies of title insurances, . . in favor of the *Proposed Insured* named in Schedule A"—the "Proposed Insured" being the "James and Christina Adams Family Trust." *Id.* at 2, 4 (emphasis added). Likewise uncertain is whether EagleBank "reasonably should have known of the existence" of a title insurance commitment between these third parties, or that Yajia Schwartz was affirmatively attempting to sell the Property at that time. *Mueller*, 2017 WL 2362137, at *7.

The well-pleaded facts render it equally difficult to infer that any breach of the Title Commitment occurred, given that the Adamses, as the "proposed Insured," were obliged to

report to Chicago Title any encumbrance on the Property made known to them:

> If the proposed Insured has or acquired actual knowledge of any defect, lien, encumbrance, adverse claim or other matter affecting the estate or interest or mortgage thereon covered by this Commitment other than those shown in Schedule B hereof,[13] and shall fail to disclose such knowledge to the Company in writing, the Company shall be relieved from liability for any loss or damage resulting from any act of reliance hereon to the extent the Company is prejudiced by failure to so disclose such knowledge. If the proposed Insured shall disclose such knowledge to the Company, or if the Company otherwise acquires actual knowledge of any such defect, lien, encumbrance, adverse claim or other matter, the Company at its option may amend Schedule B of this Commitment accordingly . . .

*Id.* at 4. This the Adamses did on April 5, 2022, apparently conveying to Chicago Title that they would require additional title insurance protections in light of the encumbrances on the Property associated with the Judgment by Confession. ECF No. 7-20 ("Buyer's counsel submitted a request today to revise the standard language of the Owner's Policy Jacket," prompting Chicago Title to "decline[] to insure the pending transaction."); *see also* ECF No. 44 at 11 (Yajia Schwartz notified the Adamses of the Judgment by Confession on March 30, 2022). Neither does there appear to be any provision in the Title Commitment that compels the insurer to proceed with the transaction at all costs, including a blight on the Property's title of such potential magnitude as the Judgment by Confession. In short, no breach of the terms of the Title Commitment may be inferred from these communications, or from Chicago Title's decision not to proceed with insuring the sale of a Property.

Even if there were a breach, though, any intentional interference claim based on the Title Commitment would fail because the allegations do not plausibly suggest any improper conduct

---

[13] Schedule B contains no reference to the Judgment by Confession, the lawsuit initiated in Eagle County District Court, or the Lis Pendens. Adams ECF No. 7-16 at 7-12.

on the part of EagleBank. The flaw on the third element mirrors the pleading defect in connection with that aspect of the claim premised on the Contract: Schwartz has twice failed to vacate the Judgment by Confession, and the factual circumstances surrounding the Judgment permit no inference that EagleBank has acted in an intentionally improper manner in seeking to preserve its right to enforce the Judgment—and the potential to recover a four-million-dollar bad loan Schwartz indisputably has not paid. No plausible inference of intentionally improper conduct on the part of EagleBank may be derived from the facts before the court on the motion for judgment on the pleadings.

The tortious interference counterclaim premised on an alleged breach of the Title Commitment does not state a claim for relief plausible on its face, and EagleBank has clearly established that "no material issue of fact remains to be resolved and [it] is entitled to judgment as a matter of law." *See Denver Health & Hosp. Auth.*, 546 F. App'x at 745. Thus, Counterclaim 4 does not survive scrutiny under Rule 12(c).

## II.      Counterclaim 5: Slander of Title

The slander of title counterclaim rests on the allegation that the objective of EagleBank's lawsuit and the recording of the Lis Pendens "was to cloud and slander Yajia's title to the Property rendering it unsalable and uninsurable . . . ." Answer/Counterclaims ¶ 61; *see also id.* ¶¶ 39, 64, 65, 89-96, 90.

Under Colorado law, a valid claim for slander of title requires: (1) slanderous words; (2) falsity; (3) malice; and (4) special damages. *See, e.g.*, *Mackall v. JPMorgan Chase Bank, N.A.*, 356 P.3d 946, 954-55 (Colo. App. 2014) (quoting *Skyland Metro. Dist. v. Mountain W. Enter., LLC*, 184 P.3d 106, 131 (Colo. App. 2007)). The alleged slanderous words must be "a

substantial factor in bringing about the loss[.]" *Fountain v. Mojo*, 687 P.2d 496, 500 (Colo. App. 1984). Evaluating the well-pleaded facts pursuant to these legal standards, the court is unable to reasonably infer the elements of a colorable slander of title claim against EagleBank. Critically, no allegations plausibly indicate the existence of any slanderous or false statements made by EagleBank in either the complaint or the Lis Pendens.

Take first the complaint, in which EagleBank has simply (1) chronicled the events surrounding the entry of the Judgment by Confession, the initiation of this lawsuit, and recording of the Lis Pendens, all of which are supported by a documentary record appended to the complaint, Am. Compl. ¶¶ 8-9, 11-16; (2) described two transfers of the Property between entities controlled by the Schwartzes, which are also supported by a documentary record appended to the complaint, *id.* ¶¶ 7, 10; (3) pointed to relevant Colorado statutory and case law, *id.* ¶¶ 17-18, 20(b); and (4) based on these factual averments and the applicable law, requested that this court draw certain legal conclusions and award EagleBank relief, *id.* ¶¶ 20, 22-26. This is standard fare for a complaint, save, perhaps, for its distinguishing feature of incorporating multiple public records whose accuracy cannot reasonably be questioned and are therefore subject to judicial notice. No inference of untruth—and certainly none of malicious intent— arises from EagleBank's straightforward statements recounting the history of its lending money to Schwartz and its attempt to recover on that unpaid multi-million dollar loan.

The same is true of the Lis Pendens, which merely provides notice of the commencement of this action and the indisputably accurate statement that, by means of this lawsuit, EagleBank "is seeking to avoid and set aside a transfer of title"—the May 2021 Transfer—"which may affect" the Property at issue here. ECF No. 19-6. Indeed, the opposite of malicious intent is

displayed in the Lis Pendens. EagleBank is statutorily entitled to make this filing, *see* Colo. Rev. Stat. § 38-35-110(1), and, as discussed above, the facts here support no inference that the Lis Pendens bears any marks of untruth. Certainly, the pleadings provide no basis for characterizing it as a "spurious" document, even if the Schwartz Parties believe (and may well be correct) that they will ultimately prevail in this litigation. But as Colorado courts have made clear, "a lis pendens is not groundless merely because the underlying claim may fail." *Better Baked*, 465 P.3d at 89. At bottom, the Schwartz Parties' disagreements regarding Schwartz owing several million dollars to EagleBank or the Judgment by Confession's enforceability, *see* Answer/Counterclaims ¶¶ 58, 87, 95 (describing this action as "meritless"), does not plausibly support the conclusion that EagleBank "can present no rational argument based on the evidence or the law in support of [its] claim." *Better Baked*, 465 P.3d at 89 (quotation omitted).

In conclusion, because the Schwartz Parties have not alleged that EagleBank made any false or slanderous statements in the Amended Complaint or the Lis Pendens, or that any statement in those documents was animated by malice (as opposed to the desire to recover nearly four million dollars it believes it is owed by Schwartz)—and further because EagleBank has clearly established that "no material issue of fact remains to be resolved and [it] is entitled to judgment as a matter of law," *Denver Health & Hosp. Auth.*, 546 F. App'x at 745—the slander of title claim cannot proceed. Like Counterclaim 4, Counterclaim 5 does not survive scrutiny under Rule 12(c).

**CONCLUSION**

For the reasons set forth herein, it is **ORDERED** that the Motion for Partial Judgment on the Pleadings Under F.R.C.P. 12(c), ECF No. 52, is **GRANTED** and the Schwartz Parties'

counterclaims for tortious interference and slander of title (Counterclaims 4 and 5, ECF No. 24 at 15-19) are **dismissed with prejudice**.[14] Judgment will be entered in favor of Plaintiff and Counterclaim Defendant EagleBank on these counterclaims when final judgment is entered in this case.

DATED: September 25, 2024                    BY THE COURT:

_____

Susan Prose
United States Magistrate Judge

---

[14] The court discerns no way that the Schwartz Parties can plead around the incontrovertible facts now before this court in a manner that would plausibly state viable counterclaims for tortious interference with contract or slander of title. The record here—the Judgment by Confession, the Contract, and the Lis Pendens—is unalterable. In a context dependent on this fixed record, granting leave to amend to attempt to repair these flawed counterclaims would be futile. *Cf. Knight v. Mooring Cap. Fund, LLC*, 749 F.3d 1180, 1199 (10th Cir. 2014) ("A dismissal with prejudice is appropriate where a complaint fails to state a claim under Rule 12(b)(6) *and* granting leave to amend would be futile.") (quoting *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006)) (emphasis added). Furthermore, the Schwartz Parties are not on their own; they are represented by a sophisticated attorney—Mark Schwartz—who has prepared detailed pleadings and has demonstrated his ability to vigorously advocate for his clients' position in this matter. *Cf. Gee v. Pacheco*, 672 F.3d 1178, 1186 (10th Cir. 2010) ("[O]rdinarily the dismissal of *a pro se claim* under Rule 12(b)(6) should be without prejudice.") (emphasis added). Therefore, after careful consideration, the court finds that Counterclaims 4 and 5 should be dismissed with prejudice.