## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:22-cv-01762-SBP

EAGLEBANK,

      Plaintiff/Counterclaim Defendant,

v.

YAJIA HU SCHWARTZ, individually and as trustee of the Yajia Hu Schwartz Revocable Trust
and as co-trustee of the Axis Investment Holdings Trust, and
MARK ALAN SCHWARTZ, individually and as co-trustee of the Axis Investment Holdings
Trust,

      Defendants/Counterclaimants, and

AXIS INVESTMENT HOLDINGS TRUST and
TAX LIEN LAW GROUP, LLC,

      Defendants/Counterclaim Plaintiffs.

---

## ORDER

---

**Susan Prose, United States Magistrate Judge**

    This matter comes before the court[1] on several motions by Plaintiff and Counterclaim

Defendant EagleBank, and Defendants and Counterclaim Plaintiffs whom this court will

collectively refer to as the "Schwartz Parties."[2] ECF Nos. 94 ("First Motion to Strike"); 102

---

[1] The parties consented to have the undersigned Magistrate Judge preside over this matter for all
purposes. *See* ECF No. 71; 28 U.S.C. § 636(c); Fed. R. Civ. P. 73; D.C.COLO.LCivR 72.2.
[2] The "Schwartz Parties" are Yajia Hu Schwartz, individually and as trustee of the Yajia Hu
Schwartz Revocable Trust and as co-trustee of Axis Investments Holdings Trust; Mark Alan

("Motion for Discovery"); 103 ("Motion to Compel"); 113 ("Motion for Reconsideration"); 114 ("Second Motion to Strike"); 117 ("Third Motion to Strike"). The court assumes the reader's familiarity with the facts of this case and its exceedingly complex procedural history.[3] For the reasons below, the Motions are **DENIED**.

## I.    First Motion to Strike (ECF No. 94)

The First Motion to Strike asks that the court strike the Schwartz Parties' response, ECF No. 91, to a previous motion from EagleBank to amend the scheduling order to reflect that several facts were not undisputed, as the initial scheduling order, ECF No. 87 ("Initial Scheduling Order"), suggested. *See* ECF No. 88 ("Motion to Amend"). EagleBank filed its Motion to Amend on May 21, 2024—14 days after the court entered the Initial Scheduling Order. Two days later, the court granted the Motion to Amend and entered the Amended Scheduling Order. *See* Order Granting Motion to Amend, ECF No. 89. That same day, but after the court entered the Amended Scheduling Order, the Schwartz Parties submitted ECF No. 91, which, although docketed as a response, is titled "Motion in Opposition."[4] In their Motion in Opposition, the Schwartz Parties asserted that EagleBank lacks good cause to support its requested amendments. *See generally* ECF No. 91 at 2-5.

The court will not revisit its decision to grant the Motion to Amend. There was good

---

Schwartz, individually and as co-trustee of Axis; and the Tax Lien Law Group, LLC, which is Schwartz's law firm. Yajia Schwartz is married to Mark Schwartz. ECF No. 24 ("Answer/Counterclaims") ¶ 16 & n.4.

[3] For background, *see* August 18, 2023 Recommendation, ECF No. 44 at 2-12; First Amended Scheduling Order, ECF No. 90 ("Amended Scheduling Order") at 2-13; and September 25, 2024 Order Granting Motion for Judgment, ECF No. 109 ("September 25 Order") at 2-10.

[4] To the extent that the Motion in Opposition seeks relief, it is denied for the reasons articulated herein.

cause to make the amendments proposed by EagleBank, as they did not alter any deadlines and EagleBank promptly moved to amend the Initial Scheduling Order within two weeks of its issuance. Further, when EagleBank helped fashion the facts section of the Initial Scheduling Order, it did not have available for its consideration the Schwartz Parties' initial disclosures, which EagleBank says revealed certain facts to be in dispute. *See* Motion to Amend at 5-6. Therefore, the First Motion to Strike is **DENIED** as moot.

## II.    Motion for Discovery (ECF No. 102)

The Motion for Discovery concerns EagleBank's responses to two sets of requests for admission ("RFAs") submitted pursuant to Federal Rule of Civil Procedure 36. *See* ECF Nos. 102-2 ("Responses to First Set of RFAs"); 102-5 ("Responses to Second Set of RFAs"). The Schwartz Parties insist that EagleBank's answers are insufficient and ask that the court enter an order stating that all facts in the RFAs are deemed admitted.

***Responses to First Set of RFAs***. The Schwartz Parties argue that EagleBank's responses to the first slate of RFAs are inadequate because they include boilerplate objections and fail to produce evidence or information controverting the facts. As an initial matter, the court observes that most, if not all, of the RFAs either (1) concern issues that are obviously outside of EagleBank's knowledge or reasonable ability to know or (2) contain multiple subparts. *See* Fed. R. Civ. P. 36(a)(2) ("Each matter must be separately stated."); *Cunningham v. Standard Fire Ins. Co.*, No. 07-cv-02538-REB-KLM, 2008 WL 2247860, at *2 (D. Colo. May 29, 2008) ("As a general rule, parties should use requests for admission to elicit simple and direct answers.") (citation omitted); *see also id.* (noting that an "overly broad and vague" RFA "does not lend itself to admission or denial pursuant to Rule 36"). Take RFA #3 as an example:

> Admit that in 2009, Yajia and Mark entered into a common law marriage, with Yajia managing joint financial affairs and assets, including the Property, and with Mark amending his Marital Trust Estate documents to name his common law wife, Yajia as its primary beneficiary.

Responses to First Set of RFAs at 15.

Putting aside the form of the RFAs, and having carefully reviewed EagleBank's responses, the court discerns no inadequacies and certainly none warranting the relief sought in the Motion for Discovery. EagleBank specifies the portions of each RFA that it admits and those it denies. *See, e.g.*, Responses to First Set of RFAs at 18 (Responding to RFA #7: "Admitted in Part. Denied in Part. Subject to and without waiver of any objection, EagleBank admits to the extent that in 2011, the Property was appraised at $1.8M. However, EagleBank denies that this accurately reflects the true market value at such time. (ECF No. 56-3).") (bold removed). Rule 36(a)(4) demands no more than this, and the Schwartz Parties have not gone beyond generalized complaints to identify any specific and concrete deficiencies in EagleBank's responses. *See* Fed. R. Civ. P. 36(a)(4) ("If a matter is not admitted, the answer must specifically deny it or state in detail why the answering party cannot truthfully admit or deny it. A denial must fairly respond to the substance of the matter; and when good faith requires that a party qualify an answer or deny only a part of a matter, the answer must specify the part admitted and qualify or deny the rest."); *cf. Leeling v. Walmart, Inc.*, No. 19-cv-03551-CMA-NRN, 2021 WL 2222718, at *4 (D. Colo. June 2, 2021) (faulting answering party who failed to "unequivocally admit or deny the relatively simple requests" and instead rested on "nonsensical objections").

Furthermore, given the nature of what it was called on to admit or deny, EagleBank understandably asserted in response to many of the RFAs that it "presently cannot admit this

RFA. EagleBank has made a reasonable inquiry and the information that it knows or can readily

obtain is insufficient to enable it to admit." Using RFA #3 again as an example, EagleBank

responded:

> Without waiver: Denied. Subject to and without waiver of any objection,
> EagleBank presently cannot admit this RFA. EagleBank has made a reasonable
> inquiry and the information that it knows or can readily obtain is insufficient to
> enable it to admit. EagleBank lacks personal knowledge of Mark and Yajia's marital
> status as of 2009, Mark and Yajia's financial relationship, and the existence and
> contents of Mark or Yajia's estate planning documents.

Responses to First Set of RFAs at 15 (bold removed). This, too, comports with Rule 36(a)(4),

which allows an answering party to maintain "lack of knowledge or information as a reason for

failing to admit or deny only if the party states that it has made reasonable inquiry and that the

information it knows or can readily obtain is insufficient to enable it to admit or deny." In

conclusion, the court finds that EagleBank's Responses to the First Set of RFAs satisfy its

obligations under Rule 36.

 ***Responses to Second Set of RFAs***. Based on the perceived insufficiencies of EagleBank's

initial responses, the Schwartz Parties tendered a second set of RFAs, which they admit pertain to

the "exact same facts previously presented," but are "rephrased to explicitly inquire whether

EagleBank was in possession of any fact, information, or evidence sufficient to controvert and

deny any of these facts." Motion for Discovery at 2. Indeed, the second set of RFAs all start with

the following language:

> Admit that "EagleBank has made a diligent, thorough, and reasonable inquiry of
> the information that it knows or can readily obtained [sic], has disclosed all
> discoverable documents presently in its possession, custody and control", and is
> unable to controvert the following statement . . . .

*See* Responses to Second Set of RFAs at 6-25. The "following statement" is a statement of facts

from the previous RFAs. *See generally id.* For the first fourteen RFAs, EagleBank responded in the same general manner:

> Without waiver: Admitted in Part. Denied in part. Subject to and without waiver of any objection, EagleBank admits that EagleBank has made a reasonable inquiry and the information that it knows or can readily obtain is insufficient to enable it to admit the statement contained in RFA [Number], and EagleBank has disclosed all discoverable documents presently in its possession, custody and control. The remainder of RFA [Number] is denied.

*See id.* at 6-13 (bold removed). For the remaining RFAs (15-47), Eaglebank did not provide a response and instead objected on the grounds that the Schwartz Parties had exceeded the number of RFAs permitted by the court in the Amended Scheduling Order. *See id.* at 13-25; *see also* Amended Scheduling Order at 18 (permitting each side 60 RFAs).

Here, too, the court finds that EagleBank has sufficiently responded or objected to the second series of RFAs. Regarding the first fourteen, EagleBank admits to specific aspects of the RFAs, denies other aspects, and specifies the portions that it lacks sufficient knowledge or information to allow it to admit or deny. Consistent with the court's conclusion above, such responses are adequate. As for the remainder (RFAs #15-47), the Amended Scheduling Order limited each *side* to no more than 60 RFAs. Amended Scheduling Order at 18. The Schwartz Parties have not sought to amend the scheduling order to permit them additional RFAs. Accordingly, the court sustains EagleBank's objections and concludes that it was not obligated to respond to RFAs #15-47.

For these reasons, the Motion for Discovery, ECF No. 102, is **DENIED**.

### III.    Motion to Compel (ECF No. 103)

In another discovery motion, the Schwartz Parties charge EagleBank with failing to

adequately respond to interrogatories 3-9 and requests for production ("RFP") 3-6. Further, the Schwartz Parties demand that EagleBank produce all correspondence with "the Dumanians, Mr. Metz, or their representatives." Motion to Compel at 7.

At the outset, the court notes that the Schwartz Parties have not shown that they expended sufficient, good-faith efforts to confer with EagleBank before filing their Motion to Compel. Federal Rule of Civil Procedure 37(a)(1) requires a moving party to confer or attempt to confer with the person or party failing to make disclosure or discovery in an effort to obtain the discovery without court action. In addition, the Local Rules of this District require parties to meet and confer prior to the filing of any motion relating to discovery. D.C.COLO.LCivR 7.1(a). The Rule instructs counsel for the moving party to "confer or make reasonable good faith efforts to confer with any opposing counsel or unrepresented party to resolve any disputed matter." *Id.* Failure to comply with Local Rule 7.1(a) alone warrants denial of a motion. *Geiger v. Z-Ultimate Self Def. Studios, LLC*, No. 14-cv-00240-REB-NYW, 2015 WL 3396154, at *2 (D. Colo. May 26, 2015) (citing *Predator Int'l, Inc. v. Gamo Outdoor USA, Inc.*, No. 09-cv-00970-PAB-KMT, 2014 WL 4056578, *2 (D. Colo. Aug. 14, 2014)).

To show that they abided by these requirements, the Schwartz Parties attach a single email in which they generally raise what they perceived to be insufficiencies in EagleBank's responses—which appear to focus on the *RFAs*. *See* ECF No. 103-3. But there is no indication that the Schwartz Parties attempted to discuss the disputes lodged in the Motion to Compel with EagleBank prior to filing that Motion. A single email generally raising an issue does not satisfy the good-faith conferral requirement in Local Rule 7.1(a). Thus, the Motion to Compel is denied for failure to confer.

That defect notwithstanding, the court also denies the Motion to Compel because the discovery requests—with a lone exception—are not relevant, for the reasons that follow.

**Interrogatories 3-9**. The contested interrogatories ask EagleBank to "[i]dentify every non-privileged Document or Communication" that it "and the other Defendants"[5] had regarding "the Contract, the Property, or any party to this lawsuit or U.S.D.C.Col. Case No. 22-Cv-00930 between January 1, 2022, and the Present" with the following individuals/entities:

(1) Buyer's Broker, Compass Colorado, LLC, Christina Mattar;
(2) Seller's Broker, Slifer, Smith and Frampton Real Estate, Kevin Kuebert, Betsy Laughlin;
(3) Land Title Guaranty Company
(4) Title Company Of The Rockies, LLC, Robert Howe, and Laura Howe;
(5) Chicago Title Company;
(6) Eaglebank; and
(7) any other person.

ECF No. 103-1 ("Written Discovery") at 6-9.

The history of this case reveals why these requests are no longer relevant. In their Answer/Counterclaims, the Schwartz Parties did not explicitly assert any affirmative defenses, but brought five counterclaims. The first three seek a declaratory judgment determining (1) whether a judgment EagleBank acquired in January 2020 is "entitled to recognition or enforcement in Colorado against [the Schwartz Parties], as a matter of law, given the facts, circumstances, and prevailing law under which it was procured"; (2) whether EagleBank may unwind the transfer of the property at issue in this case that occurred in May 2021 under Colorado state law; and (3) whether EagleBank has a lien on, interest in, or claim to the property.

---

[5] It is unclear how the Schwartz Parties expect EagleBank to produce documents and communications that other individuals may have had with third parties.

Answer/Counterclaims ¶¶ 69-74. Additionally, the Schwartz Parties brought counterclaims for tortious interference and slander of title, which centered on the sale of the property to the Adamses, which the Schwartz Parties say fell through because EagleBank filed a notice of lis pendens. *Id.* ¶¶ 75-97. The court dismissed these two claims with prejudice in the September 25 Order after concluding that the Schwartz Parties failed to plausibly allege elements of both claims.[6] September 25 Order at 12-22. Given this development and considering as well EagleBank's claim alleging fraudulent conveyance, the only issues remaining in this case concern the enforceability of a January 2020 judgment and whether it entitles EagleBank to an interest in the property, and the propriety of a May 2021 transfer of the property between members of the Schwartz Parties. *See* Amended Complaint, ECF No. 19 ¶ 25.

Here, though, the interrogatories seek documents and communications "between January 1, 2022, and Present," a period well after the relevant events and issues in this case occurred. How subsequent communications and documents factor into the relevant events is unclear. *See Bonanno v. Quizno's Franchise Co., LLC*, 255 F.R.D. 550, 553 (D. Colo. 2009) ("[W]hen relevancy is not readily apparent, the party seeking the discovery has the burden to show the relevancy of the request."). Moreover, Interrogatories 3-7 seek documents or communications with entities or individuals involved in the sale between the Schwartz Parties and the Adamses. But because all claims regarding that sale have now been dismissed, the court fails to comprehend—and the Schwartz Parties have wholly failed to explain—how these interrogatories still hold whatever relevance they may have once had. Consequently, the court finds that

---

[6] The Schwartz Parties' Motion for Reconsideration asks the court to revisit its dismissal of the two counterclaims. *See generally* Motion for Reconsideration.

Interrogatories 3-9 lack relevance, and therefore declines to compel EagleBank to supplement its answers.

*RFPs 3-6*. The first two challenged RFPs (3 and 4) both demand "all non-privileged Documents and Communications between You and any Other Defendant which references or mentions the Contract, the Property, or any party to this lawsuit or U.S.D.C.Col. Case No. 22-Cv-00930 on which Seller or her Counsel were not copied." Written Discovery at 11-12. The court presumes that "any Other Defendant" refers to the now-dismissed consolidated parties since those parties were not formally terminated from the case until September 25, 2024, and the Schwartz Parties propounded their RFPs in April 2024. For the reasons already given, any communications with those parties are no longer relevant to the issues in this case.

RFP #5 requests documents and communications from EagleBank's "loan file, and loan mitigation, loan mitigation [duplication in original], loan loss, loan performance, and loan underwriting file (including all loan/underwriting committee notes and correspondence) pertaining to any Schwartz party to this lawsuit or U.S.D.C.Col. Case No. 22-Cv-00930 between January 1, 2013, and the present." Written Discovery at 12. Yet, the Schwartz Parties' own articulation of why this request is relevant demonstrates why the court must conclude to the contrary. The Schwartz Parties maintain that the sought-after documents and information would go toward "tortious intent," "actual malice," and corroborate the "fraud and conspiracy" by EagleBank and a group that the Schwartz Parties refer to only as "the Dumanians." Motion to Compel at 3-7. But again, the court has dismissed the counterclaims for tortious interference and slander of title; thus, "tortious intent" and "actual malice" are not live issues in this case. Further, as the court will address further below, the issues in this case do not encompass what may or may

not have happened with the Dumanians and thus do not oblige the court to explore those issues.

Finally, RFP #6 asks that EagleBank produce all non-privileged documents and communications between EagleBank and the Schwartz Parties between "January 1, 2013, and the present." Written Discovery at 13. Unlike the other discovery requests, RFP #6 may seek relevant documents and information since it encompasses the relevant time period. Still, the court takes EagleBank's point that the request is quite broad and may not be proportional to the needs of the case, given that much of the information could likely be found through other means. In any event, the court will not attempt to fashion a solution when the parties have not meaningfully conferred on this issue.

*Additional request*. Although not included in their written discovery requests, the Schwartz Parties have also demanded that EagleBank produce correspondence between EagleBank and "the Dumanians or any of their representatives, including Mr. Stephen Metz, from 2019 through present." Motion to Compel at 7. The Dumanians seemingly include Dr. Dumanian, a former business partner of Mark Schwartz; however, beyond this, it is unclear as to whom the Schwartz Parties may be referring. *See* September 25 Order at 3. The court is also left to speculate regarding the relevance of the Dumanians to the issues in this case, and it notes that the operative pleadings contain no mention of them. *See generally* Answer/Counterclaims; ECF No. 19. In the Motion to Compel, the Schwartz Parties reference the Dumanians in connection with other potential legal proceedings. This court, however, makes clear that it will not entertain any attempts to inject issues that may exist in a separate criminal matter or other civil proceedings into this case. In the end, though, the Schwartz Parties have not convinced the court that EagleBank's communications with the Dumanians are in any way relevant to the instant

11

case. *See Bonanno*, 255 F.R.D. at 553.

For these reasons, the Motion to Compel is **DENIED**.

## IV.    Motion for Reconsideration and Second and Third Motions to Strike (ECF Nos. 113, 114, 117)

As alluded to above, the Schwartz Parties have sought (1) reconsideration of the court's

September 25 Order, (2) certification of the Order for interlocutory appeal under 28 U.S.C.

§ 1292(b), or (3) leave to amend their dismissed counterclaims. The court denies each request.

First, the Schwartz Parties have not come forward with recently discovered evidence or

new legal authority demonstrating an error in the court's September 25 Order. *Servants of the

Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000) ("Grounds warranting a motion to

reconsider include (1) an intervening change in the controlling law, (2) new evidence previously

unavailable, and (3) the need to correct clear error or prevent manifest injustice.") (citation

omitted); *see also id.* (noting reconsideration is not appropriate based on "new arguments, or

supporting facts which were available at the time of the original motion"). The errors the

Schwartz Parties attribute to the court's decision—most of which are asserted for the first time in

a reply brief, ECF No. 115—are difficult to follow.[7] For instance, they argue that the court erred

when it dismissed their counterclaims based on the conclusion that they were proceeding pro se.

Motion for Reconsideration at 3-4 ("This is particularly concerning as the dismissal was based

on a determination that [Mark Schwartz] was representing himself, pro se, and was not acting in

---

[7] More still, many appear to be concerned with EagleBank's fraudulent conveyance claim, which
was not addressed in the September 25 Order, and are thus irrelevant. *See, e.g.*, ECF No. 115
at 11-12 (arguing that the court failed to consider whether Yajia Schwartz gave reasonably
equivalent value for the transfer of the at-issue property).

a representative capacity on behalf of separate persons and separate legal entities[.]"). The court cannot comprehend this argument—both as to how the Schwartz Parties arrived at this reading of the court's order and why the argument is legally pertinent—and observes that, not surprisingly, the Schwartz Parties abandoned this argument in their reply.

Notwithstanding their lack of any clear articulation of grounds for reconsideration, the court does not perceive any of the Schwartz Parties' arguments as raising newly discovered evidence or legal authority that would change the court's analysis in the September 25 Order. Absent this, the Schwartz Parties have not caused the court to question its decision so as to leave it "with the definite and firm conviction that a mistake has been committed.'" *Ocelot Oil Corp. v. Sparrow Indus.*, 847 F.2d 1458, 1464 (10th Cir. 1988) (citing *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). For the same reasons, the court will not disturb its decision to dismiss the Schwartz Parties' counterclaims for slander of title and tortious interference without leave to amend.

The Schwartz Parties also have failed to convince the court that there are sufficient grounds for certifying the September 25 Order for interlocutory appeal. To start, such appeals are "traditionally disfavored," *Vallario v. Vandehey*, 554 F.3d 1259, 1262 (10th Cir. 2009), and "exceedingly rare," *Carbajal v. Keefer*, 51 F. Supp. 3d 1065, 1068 (D. Colo. 2014). Under § 1292(b), a court may certify an issue for interlocutory appeal if three criteria are met: (1) the order involves a "controlling question of law"; (2) there is "substantial ground for difference of opinion" as to the resolution of the question; and (3) certification "may materially advance the ultimate termination of the litigation." The Schwartz Parties' scattershot and undeveloped arguments fail to identify a controlling and debated question of law necessary to satisfy their

13

"heavy burden to show that 'exceptional circumstances' warrant immediate appellate review."

*Atl. Richfield Co. v. NL Indus., Inc.*, No. 20-cv-00234-NYW-KAS, 2023 WL 5333756, at *2 (D. Colo. Aug. 18, 2023) (quoting *Hawaii ex rel. Louie v. JP Morgan Chase & Co.*, 921 F. Supp. 2d 1059, 1065 (D. Haw. 2013) (quoting *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 475 (1978))).

Therefore, the Motion for Reconsideration is **DENIED**. With this, the court also **DENIES** as moot the Second and Third Motions to Strike.[8]

\*        \*        \*

For these reasons, it is hereby ORDERED:

(1) The First Motion to Strike (ECF No. 94) is **DENIED as moot**;

(2) The Motion for Discovery (ECF No. 102) is **DENIED**;

(3) The Motion to Compel (ECF No. 103) is **DENIED**;

(4) The Motion for Reconsideration (ECF No. 113) is **DENIED**;

(5) The Second Motion to Strike (ECF No. 114) is **DENIED as moot**; and

(6) The Third Motion to Strike (ECF No. 117) is **DENIED as moot**.

DATED: February 26, 2025                    BY THE COURT:

_____
Susan Prose
United States Magistrate Judge

---

[8] The Second Motion to Strike asks the court to strike the Motion for Reconsideration and the Third Motion seeks to strike the Schwart Parties' reply in support of the Motion for Reconsideration, ECF No. 115. *See* Second Motion to Strike; Third Motion to Strike.